UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **ACTIONLINK, LLC** | ) | **CASE NO. 5:08CV2565** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE SARA LIOI** |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| **LAURA SORGENFREI** | ) | |
| | ) | |
| **Defendant.** | ) | |

This Memorandum Opinion and Order arises out of the motion of Defendant Laura Sorgenfrei ("Sorgenfrei") for summary judgment on the claims asserted against her by Plaintiff ActionLink, LLC ("ActionLink"). (Doc. No. 49.) ActionLink has filed an opposition (Doc. No. 50), and Sorgenfrei has filed a reply. (Doc. No. 51.) For the reasons that follow, Sorgrenfrei's motion is **DENIED** as to counts 1, 2, 5, 6, and 7, and **GRANTED** as to counts 3 and 4.

**I.        FACTUAL AND PROCEDURAL HISTORY**

Unless otherwise noted, the following facts are taken from ActionLink's complaint. (Doc. No. 2-1.) ActionLink is an Ohio limited liability company with its principal place of business in Akron, Ohio engaged in the business of providing merchandising and demonstration services in the electronics industry. Sorgenfrei is a Virginia resident and former employee of ActionLink. ActionLink hired Sorgenfrei as a Senior Vice President on March 20, 2006.[1] In April 2006, Sorgenfrei, then known as Laura Rojas, executed a confidentiality agreement that expressly prohibited her from, among other things (and relevant here), disclosing or using outside contemplated purposes, ActionLink's confidential and/or proprietary

---

[1] Erroneously stated as March 20, 2008 in ActionLink's complaint. (Doc. No. 2-1, ¶ 6.)

information and trade secrets. (Doc. No. 2-1.) On August 2, 2007, Sorgenfrei sent an email to Cindy Fitzgibbons, ActionLink's executive vice president, stating that she agreed to sign a six month non-compete agreement once that agreement was "ready and reviewed." (Doc. No. 50-1 at p. 95.) Sorgenfrei, however, never signed a formal non-compete agreement. In fact, her failure to sign a non-compete agreement led to her termination from ActionLink in March 2008. On March 21, 2008, Craig Eoff, counsel for ActionLink, sent a "Cease and Desist Demand" letter to Sorgenfrei, which, amongst other things, demanded that Sorgenfrei retain and preserve information, including electronically stored information, pertaining to ActionLink in anticipation of litigation. (Doc. No. 38-12 at pp. 1-2.) Pursuant to mutual agreement, Sorgenfrei continued working, post-termination, for ActionLink for a brief period to complete a few pending matters.

Pursuant to her employment, Sorgenfrei was provided a laptop computer to utilize to perform her job responsibilities. (Doc. No. 50 at p. 1.) The laptop contained information covered by the confidentiality agreement, including "sales data, reporting data" and Actionlink's proprietary information. (Doc. 50-1, Sorgenfrei Deposition II at pp. 32-33.)[2] The laptop computer was retained, with ActionLink's permission, by Sorgenfrei for approximately three weeks following her termination for work related to the post-termination matters referenced above. The laptop computer was eventually returned to ActionLink in April 2008. Upon the laptop's return, Del Tanner, ActionLink's chief operating officer, booted up the laptop to locate Sorgenfrei's emails and "other things." (Doc 50-2, Tanner Affidavit at ¶¶ 39-41.) Unable to locate the files, Tanner directed that Kroll Ontrack, a computer forensic analysis firm, be retained to conduct an analysis of the laptop's hard drive to determine if it had been "erased, wiped out or otherwise had its data destroyed." (*Id.* at ¶ 42.) A forensic analysis of the laptop

---

[2] Defendant Sorgenfrei has given depositions on two separate occasions, and the Court shall refer to these depositions as "Sorgenfrei Deposition I" and "Sorgenfrei Deposition II," respectively.

was completed by Brian Rydstrom, a senior computer forensics engineer at Kroll Ontrack. Rydstrom was unable to retrieve any email, internet, or user-created Microsoft Office files from the laptop. (Rydstrom Affidavit, Doc. No. 50-5 at ¶ 16(a).) Microsoft Vista, an operating system, was installed on the laptop hard drive on March 29, 2008. (*Id.* at ¶ 16(g).) Rydstrom offers, as an opinion, that:

> the majority of data that may have existed on this drive prior to the installation of the existing operating system on March 28, 2008, may have been overwritten as a result of any of the following: the installation of the Microsoft Vista operating system; the creation of files and folders on March 29, 2008; by a random pattern through the use of a wiping utility, or by a wiping process that was run before or as a result of the Sony Restore/Recovery process.

(*Id.* at 16(i).) After Sorgenfrei's termination from ActionLink, she was hired by Premium Retail Sales, an ActionLink competitor. Around that same time, ActionLink lost at least two customers, Hewlett Packard and Logitech, to Premium Retail Sales. (Doc. No. 50-2, Tanner Affidavit at ¶¶ 23-32.)

ActionLink also bases one of its claims on conduct that allegedly occurred during 2007, while Sorgenfrei was still employed by the company. Sorgenfrei's compensation while at ActionLink included a variable commission component that depended upon the amount of profit ActionLink made on a per customer basis. In 2007, Sorgenfrei instructed Natasha Elia, an employee of ActionLink, to "manipulate charges and budgets to various customers of ActionLink over and above the budgeted amounts as set forth in the written contracts with those customers." (Doc. No. 50-3, Elia Affidavit at ¶ 3.) This inflation resulted, according to ActionLink, in the payment of fraudulent and artificial commissions to Sorgenfrei.

ActionLink filed this lawsuit in the Summit County Court of Common Pleas on September 25, 2008. (Doc. No. 2-1.) On October 30, 2008, Sorgenfrei filed a notice of removal pursuant to 28 U.S.C. § 1441. (Doc. No. 2.) Sorgenfrei answered the complaint, and asserted a

3

counterclaim against ActionLink, on November 5, 2008. (Doc. No. 4.) After an unsuccessful attempt to resolve this case through mediation, ActionLink filed a motion to extend the discovery deadline previously established by the Court. (Doc. No. 34.) The Court denied that motion on June 18, 2009, after ActionLink admitted that they had been dilatory in responding to Sorgenfrei's discovery requests and that there was no good cause for ActionLink's failure to meet the discovery deadline. (Doc. No. 37.)

On September 14, 2009, the dispositive motion deadline, ActionLink filed a motion for partial summary judgment as to two counts of Sorgenfrei's counterclaim. (Doc. No. 39.) Sorgenfrei did not file a dispositive motion on that date, but rather filed an eleventh hour motion to extend the dispositive motion deadline. (Doc. No. 40.) The Court denied that motion on September 28, 2009. (Doc. No. 41.) On October 7, 2009, Sorgenfrei filed a motion for leave to file a motion for summary judgment *instanter*. (Doc. No. 42.) On October 22, 2009, Sorgenfrei filed a motion to dismiss her counterclaims, with prejudice.[3] (Doc. No. 44.) The Court held a conference regarding Sorgenfrei's motion to file a motion for summary judgment *instanter*, and upon consideration, permitted Sorgenfrei to file the motion on November 2, 2009. (Doc. No. 47.) ActionLink filed an opposition on November 23, 2009. (Doc. No. 50.) Sorgenfrei thereafter filed a reply. (Doc. No. 51.) Against this backdrop, Sorgenfrei's motion for summary judgment is ripe for decision.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

---

[3] The Court **GRANTS** Sorgenfrei's motion to dismiss her counterclaims, with prejudice. (Doc. No. 44.) Therefore, ActionLink's motion for partial summary judgment (Doc. No. 37) is **DENIED AS MOOT**.

Case: 5:08-cv-02565-SL  Doc #: 55  Filed: 01/27/10  5 of 18.  PageID #: 829


any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law […].

Rule 56(e) specifies the materials properly submitted in connection with a motion for summary judgment:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein [. . .]. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

However, the movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *White v. Turfway Park Racing Ass'n*, 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), *citing Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id*.

### III. LAW AND ANALYSIS

ActionLink's complaint asserts seven causes of action against Sorgenfrei. The resolution of Sorgenfrei's motion for summary judgment as to the first five causes of action turns on the outcome of ActionLink's contention in opposition that Sorgenfrei destroyed evidence contained on the ActionLink owned laptop possessed by Sorgenfrei. Based upon this allegation, ActionLink alleges spoliation as an independent cause of action in claim five and urges the Court to apply an adverse evidentiary inference against Sorgenfrei as to claims one through four. Therefore, at the outset, the Court will address the issue of spoliation and the laptop. As explained in the following paragraphs, the spoliation claim as an independent cause of action as

alleged in Count Five is governed by Ohio law,[4] while the adverse evidentiary inference issues are governed by federal law.

A.        **Spoliation as Alleged in Count Five**

Ohio recognizes intentional spoliation of evidence as an independent cause of action in tort that may be brought against the primary defendant in an action or a third party to the action. *Smith v. Howard Johnson Co., Inc.*, 67 Ohio St. 3d 28, 29 (1993). To prove spoliation, a plaintiff must demonstrate (1) pending or probable litigation involving the plaintiff; (2) knowledge on the part of defendant that litigation exists or is probable; (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case; (4) disruption of the plaintiff's case; and (5) damages proximately caused by the defendant's acts. *Id.*

ActionLink has proffered sufficient evidence of spoliation to survive Sorgenfrei's motion for summary judgment. ActionLink, through its counsel Craig Eoff, served upon Sorgenfrei via certified mail a cease and desist demand letter dated March 21, 2008. (Doc. No. 2-1.) In that letter, ActionLink notified Sorgenfrei of its intention to file suit against her and demanded that "retain and preserve files [. . .] in anticipation of litigation, and to preserve evidence for litigation purposes." (*Id.* at p. 21) Evidence of the first two elements, pending or probable litigation and knowledge of that litigation by the defendant, is provided by the letter, which Sorgenfrei admits receiving. (Doc. 2-1 at p. 21; Doc. No. 38, Sorgenfrei Deposition I at p. 38.)

As to the third element, Ohio does not recognize a cause of action for negligent spoliation of evidence. *White v. Ford Motor Co.* 142 Ohio App. 3d 384, 388 (2001). "'Willful' reflects an intentional and wrongful commission of the act" and "contemplates more than mere

---

[4] Sorgenfrei was apparently a Virginia resident and possessed the laptop in Virginia at the time the evidence was allegedly destroyed. Both parties, however, rely on Ohio law in their discussion of the issue and the Court shall do the same.

7

negligence." *Id.* at 387-88. Here, a material issue of fact exists as to whether or not Sorgenfrei willfully destroyed evidence in order to disrupt ActionLink's case. ActionLink has provided evidence that the laptop was in Sorgenfrei's exclusive possession until its return to the company in late March 2008. Sorgenfrei, in her deposition, admitted that the laptop, at one point, contained Actionlink's "proprietary information," including "sales data, [and] reporting data." (Doc. No. 50-1, Sorgenfrei Deposition II at pp. 31-32.) ActionLink has provided Rydstrom's affidavit and report that some event, whether it be the installation of a new operating system, the Sony Restore/Recovery process, or by a wiping utility, occurred on March 29, 2008. (Rydstrom Affidavit, Doc. No. 50-5 at ¶ 16.) Moreover, Rydstrom attests that the computer event that occurred on March 29 led to the majority of the data that existed on the laptop hard drive to be overwritten. (*Id.*) Finally, Rydstrom's affidavit and analysis suggest that there is evidence that files on the laptop hard drive were created prior to March 29, 2008 and copied on to the laptop hard drive on that date. (*Id.* ("files containing creation dates of March 29, 2008 and last written dates prior to March 29, 2008 are indicative of files that were created prior to the installation of the operating system and were copied to this hard drive from another source on March 29, 2008 after the operating system was installed."))

When questioned as to whether she reinstalled an operating system on the laptop in March 2008, Sorgenfrei answered "I don't know." (Doc. No. 38, Sorgenfrei Deposition I at p. 40.) Moreover, Sorgenfrei answered "probably not" to a question regarding whether she knew how to conduct an operating system reinstallation. (*Id.*) In her opposition, Sorgenfrei asserts that "her own facility when it comes to technical support of computers is limited" and offers that she consistently relied on ActionLink technical support to solve problems related to her computer. (Doc. No. 49 at p. 13.) Thus, a material issue of fact exists as to whether Sorgenfrei willfully,

8

negligently, or not at all, destroyed evidence on the laptop in March 2008 in an attempt to disrupt ActionLink's case.

The fourth element, disruption of the plaintiff's case, presents an issue as to *what* evidence was allegedly destroyed when the computer event occurred on March 29. It is not obvious to the Court that, standing alone, the destruction of the files on the laptop, including ActionLink's confidential and proprietary files, provides any evidentiary support for a conclusion that Sorgenfrei retained or misappropriated those files. Rydstrom's affidavit, however, and most particularly the portion regarding files that have been copied to the hard drive from another source, provides some evidentiary support for ActionLink's theory that Sorgenfrei downloaded files from the laptop hard drive, took some action to overwrite the hard drive, and then copied some files back on to the hard drive. Moreover, this Court must keep in mind that "holding the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed evidence would [. . .] allow parties who have intentionally destroyed evidence to profit from that destruction," *Kronisch v. United States*, 150 F.3d 112, 127-28 (2d Cir. 1998), and also that, for the purposes of summary judgment this Court must view the evidence in a light most favorable to ActionLink, and, as such, the Court finds there is an issue of fact as to whether the destruction of the data on the laptop hard drive disrupted ActionLink's case.

The final element of the tort of spoliation is damages. ActionLink has offered evidence that it spent over $3,800 in a largely unsuccessful attempt to recover data from the laptop hard drive.

Sorgenfrei argues that her timely return of the laptop to ActionLink shortly after her termination forecloses any claim of spoliation. (Doc. No. 49 at p. 12.) This argument is without merit. ActionLink is alleging the destruction of evidence in the form of data or

information that was once on the laptop, not the laptop itself. Moreover, Sorgenfrei's reliance on an internal ActionLink email from Adam Young, ActionLink's manager of systems and networking, for the proposition that "Action Link's own business records document that Ms. Sorgenfrei did not wipe out the data on the laptop" is misplaced. (Doc. No. 49 at p. 13; email reproduced at Doc. No. 49-6.) Read in its entirety, Young's email supports ActionLink's contention that the contents of the laptop hard drive were altered before the laptop was returned to the company.[5]

Therefore, Sorgenfrei's motion for summary judgment as to claim five, spoliation, is **DENIED**.

**B.        Spoliation Inference as to Counts One Through Four**

Prior to February 2009, the Sixth Circuit held that state law governs the imposition of sanctions for spoliation. *See, e.g.*, *Beck v. Heik*, 377 F.3d 624, 641 (6th Cir. 2004); *Nationwide Mut. Fire Ins. Co. v. Ford Motor Co.*, 174 F.3d 801, 804 (6th Cir. 1999). The Sixth Circuit has recently held, however, that because "the authority to impose sanctions for spoliated evidence arises [. . .] from a court's inherent power to control the judicial process" and because "a spoliation ruling is evidentiary in nature," federal law governs spoliation sanctions. *Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009). "[A] proper spoliation sanction should serve both fairness and punitive functions" and is left to the broad discretion of the district court. *Id.*

The Sixth Circuit has not articulated a formula or test for determining when spoliation sanctions are appropriate or what sanctions are appropriate upon finding spoliation. Indeed, *Adkins* recognized that "failures to produce relevant evidence fall along a continuum of

---

[5] In its entirety, Young's email reads: "We have her [Sorgenfrei's] laptop and it has not been wiped. However, her email was very nicely removed from it before she sent it back. There are documents on it but hard to say what has been removed or not. Is there something specific you are looking for?" (Doc. No. 49-6.) Sorgenfrei erroneously focuses solely on the clause "it has not been wiped."

fault – ranging from innocence through the degrees of negligence to intentionality" and that "the severity of a sanction may, depending on the circumstances of the case, correspond to the party's fault." *Id.* at 652-53 (internal quotations and citations omitted). While determining whether spoliation sanctions are appropriate, and the crafting of those sanctions is left to the broad discretion of the district court, guiding principles can be ascertained through a review of decisions of other circuits and lower courts within the Sixth Circuit. First, a party having control over the evidence must have had a duty to preserve the evidence at the time it was destroyed. *See Residential Funding Corp. v. Degeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002). Next, the destruction of the evidence must have caused prejudice to the party alleging spoliation. *See Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76 (3d Cir. 1994); *Barton Brands Ltd. v. O'Brien & Gere, Inc.*, No. 3:07-CV-78-H, 2009 U.S. Dist. LEXIS 52887 at *2 (W.D. Ky June 22, 2009). Prejudice occurs where "the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case." *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990). Finally, the severity of the sanctions should correspond with the degree of fault. *Adkins*, 554 F.3d at 652-53.

ActionLink asks this Court to "infer" the following, based on the computer event that occurred on March 29, 2008:

> (1) Sorgenfrei downloaded information from the ActionLink laptop before the computer event.
> (2) That information consisted of trade secrets and proprietary information.
> (3) Sorgenfrei "kept this [confidential] information contrary to her contractual obligations as set forth in the Confidentiality agreement."
> (4) Sorgenfrei misappropriated, or stole, those trade secrets.
> (5) The evidence formerly contained on the laptop proves Sorgenfrei tortiously interfered with ActionLink's contracts and business relationships.

(Doc. No. 50 at pp. 12-14.) ActionLink's proposed "inference," however, is tantamount to granting summary judgment as to the majority of its claims. Such a severe sanction is clearly

11

inappropriate here, where it is unclear whether any spoliation has in fact occurred. "A spoliation inference is merely an inference that a fact finder may draw from a view of all the evidence presented at trial; it is not a legal conclusion that must be reached when evidence is presented that a party has willfully destroyed relevant evidence." *Paramount Pictures Corp. v. Davis*, 234 F.R.D. 102, 113 (E.D. Pa. 2005). Therefore, the Court declines ActionLink's invitation to make such an inference at this time. The Court will entertain a motion for an appropriate jury instruction at trial.

**C.       Breach of the Confidentiality Agreement and Misappropriation of Trade Secrets (Claims One and Two)**

As these two claims are closely related and involve the same factual predicate, which has been extensively discussed above, the Court will discuss them together. The March 29 computer event apparently had the effect of destroying ActionLink's confidential or proprietary data that existed on the laptop, data that Sorgenfrei admits resided at one time on the laptop. That destruction, however, does not necessarily equate to an evidentiary showing that Sorgenfrei violated her confidentiality agreement by *retaining* that data or misappropriated ActionLink's trade secrets. ActionLink, however, has provided evidentiary support that some files were copied from the laptop to another source, and then copied back on to the laptop after the March 29 computer event. (Rydstrom Affidavit, Doc. No. 50-5 at ¶ 16.) It is this evidence, viewed in a light most favorable to ActionLink, that raises the genuine issue of material fact as to whether Sorgenfrei downloaded, retained, and therefore misappropriated, confidential material in violation of the confidentiality agreement or trade secrets.

Sorgenfrei's motion for summary judgment with respect to these two issues focuses almost exclusively on the inevitable disclosure doctrine. That doctrine is relevant to

12

whether or not an injunction preventing Sorgenfrei from working for an ActionLink competitor might be appropriate as a remedy for a trade secret misappropriation or breach of the confidentiality agreement. Though Sorgenfrei raises persuasive arguments as to the impropriety of injunctive relief in this case, those arguments need not be addressed at the summary judgment stage of these proceedings. Moreover, even if this Court were to foreclose the possibility of injunctive relief at this point, ActionLink's complaint seeks damages for these violations. And, as ActionLink notes in its opposition, nominal damages are available for trade secret misappropriations and breaches of contract. *See, e.g., Becker Equipment, Inc. v. Flynn*, 2004 Ohio 1190 at *18 (Ohio Ct. App. 2004).

Therefore, Sorgenfrei's motion for summary judgment with respect to claims one and two are **DENIED**.

**D.      Tortious Interference with Contract and Prospective Business Relations (Claims Three and Four)**

Under Ohio law, "in order to recover for a claim of intentional interference with a contract, one must prove (1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages." *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St. 3d 415, 418 (1995).

Under Ohio law, "the tort of interference with a business relationship occurs when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relationship with another." *Harris v. Bornhorst*, 513 F.3d 503, 523 (6th Cir. 2008) (citing *McConnell v. Hunt Sports Enters.*, 725 N.E.2d 1193, 1216 (Ohio Ct. App. 1999)). "The elements of tortious interference with a business relationship are (1) a

business relationship, (2) the wrongdoer's knowledge thereof, (3) an intentional interference causing a breach or termination of the relationship, and (4) damages resulting therefrom." *Id.*

ActionLink offers, in its one paragraph opposition to Sorgenfrei's motion for summary judgment as to these two counts, its theory that the evidence on the laptop allegedly spoliated by Sorgenfrei "would be evidence of her interference with ActionLink's contracts and business relationships." (Doc. No. 50 at p. 19.) This alleged spoliation, along with the fact that two ActionLink customers left the company for the same company where Sorgenfrei found employment after leaving ActionLink, is sufficient, according to ActionLink, to survive Sorgenfrei's motion for summary judgment. Sorgenfrei, however, notes that contrary to their promises in response to her written interrogatories, ActionLink has failed to produce any evidence to support its claim that Sorgenfrei interfered with its business relationships or contracts. (Doc. No. 49 at p. 11.)

The Court is of the view that Sorgenfrei is correct as to this issue. ActionLink asks this Court to take too great an evidentiary leap in order to sustain its claims. Compare the claims dealing with the misappropriation of trade secrets and the breach of the confidentiality agreement. There, ActionLink has provided sufficient evidence that the laptop once contained that type of information, that some files were downloaded from the laptop, and that the laptop was in the possession of Sorgenfrei when evidence of those downloads was allegedly destroyed. Moreover, it appears that the evidence that was destroyed may be the only vehicle for ActionLink to prove its claims.

Contrast the tortious interference claims. Here, ActionLink has offered no support whatsoever to support its conclusion that the information destroyed on the laptop in the March 29 computer event contains evidence of Sorgenfrei's interference with ActionLink's business

14

relationships or contracts. ActionLink has not offered any evidence of, nor even specifically alleged, contact between Sorgenfrei and the decision makers at Logitech or Hewlett Packard from which a reasonable juror could infer that Sorgenfrei intentionally interfered with ActionLink's contracts or prospective business relations. Furthermore, and again in contrast to its earlier claims, it is unclear how the allegedly destroyed laptop evidence in any way supports the tortious interference claims. Moreover, there would appear to have been many other far superior evidentiary vehicles for ActionLink to have provided support for these claims.[6] But they have not done so. And it is clear that ActionLink's own suspicions as to the reasons Logitech and Hewlett Packard chose to take their business elsewhere falls far short of "evidence on which the jury could reasonably find for [ActionLink]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The "mere scintilla of evidence" provided is clearly insufficient to survive summary judgment. *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999) (en banc).

Therefore, Sorgenfrei's motion for summary judgment with respect to claims three and four are **GRANTED**.

**E.     Conversion (Claim Six)**

Under Ohio law, conversion is defined as "the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." *Joyce v. General Motors Corp.*, 49 Ohio St.3d 93, 96 (1990). The elements required for conversion are: (1) a defendant's exercise of dominion or control; (2) over a plaintiff's property; and (3) in a manner inconsistent with the plaintiff's rights of ownership. *Cozmyk Enters. v. Hoy*, No. 96APE10-1380, 1997 Ohio App. LEXIS 2864 (Ohio Ct. App., June 30, 1997). However, "Ohio law recognizes two types of conversion. The first type

---

[6] As an example, ActionLink could have deposed or interviewed representatives of Logitech and Hewlett Packard in an attempt to support its claims.

is where the wrongful possessor properly acquires the property but then refuses to return it upon demand and the second is where the wrongful possessor simply unlawfully acquires the property." *In re Panel Town of Dayton, Inc*., 338 B.R. 764, 774 (S.D. Ohio 2006), citing *Petefish v. Haselberger*, Ashland App.No. 2005-COA-012, 2005 Ohio App. LEXIS 5088 (Ohio Ct. App., Oct. 21, 2005). The aforesaid demand and refusal elements are conditional, and are necessary "if the original taking was rightful and no act of dominion or control inconsistent with the [owner's] ownership had taken place." *See Ohio Telephone Equipment & Sales, Inc. v. Hadler Realty Co*. 24 Ohio App.3d 91, 93 (1985).

In this case, ActionLink bases its claim for conversion not on the laptop itself, which was returned to the company, but on Sorgenfrei's alleged destruction of the contents and information contained on the laptop. And there can be no doubt that this case falls in to the first type of conversions recognized by Ohio law, as both parties agree that Sorgenfrei properly acquired the data in question pursuant to her employment. ActionLink has provided evidence that it demanded the return of the laptop. In fact, representatives from ActionLink and Sorgenfrei negotiated an extension of the date Sorgenfrei was required to return the computer so that she could continue to work, post-termination, on a few projects as agreed, via email. (Doc. No. 38-3.) While ActionLink's email does not specifically demand Sorgenfrei return the data contained on the laptop, this Court finds the company's demand of the laptop return to necessarily encompass such data. Therefore, ActionLink has made a sufficient showing of a demand to return the data as required by Ohio law. Moreover, as discussed earlier, ActionLink has made a

sufficient showing that such data was not returned, which is "a manner inconsistent with the plaintiff's rights of ownership."[7]

Therefore, Sorgenfrei's motion for summary judgment with respect to claim six is **DENIED**.

**F.        Fraud and Conversion of Funds (Claim Seven)**

To establish a claim for fraud under Ohio law, the plaintiffs must establish the following elements: (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance. *Cohen v. Lamko, Inc.*, 462 N.E.2d 407, 409 (Ohio 1984).

ActionLink alleges Sorgenfrei instructed ActionLink employee Natasha Elia to falsely increase the charges to be billed to ActionLink clients. (Doc 50-3, Elia Affidavit at ¶ 3.) As a result of these overcharges, ActionLink alleges, Sorgenfrei received in excess of $18,000 in unearned commissions. (Doc 50-2, Tanner Affidavit at ¶ 38.) Sorgenfrei correctly notes that ActionLink has not provided evidence of any checks or credits issued as refunds to the allegedly overcharged customers, nor any written documentation supporting these claims. (Doc. No. 49 at p. 16-17.) Elia's affidavit, which is made on personal knowledge and contains evidence that appears admissible at trial as a non-hearsay admission of a party-opponent, however, gives rise to two material issues of fact: (1) whether or not Sorgenfrei instructed Elia to overcharge the

---

[7] Although ActionLink's conversion claim as to the laptop data survives summary judgment, this Court notes that the if, at trial, it finds the conversion claim to be "no more than a restatement of the same operative facts" that form the basis of the plaintiff's statutory claim for trade secret misappropriation, *Glasstech, Inc. v. TGL Tembering Sys., Inc.*, 50 F. Supp. 2d 722, 730 (N.D. Ohio 1999), this claim will be preempted by the Ohio Uniform Trade Secrets Act. OHIO REV. CODE § 1333.67.

17

customers, and (2) if she did, her intent in doing so. Under Rule 56(e)(2), by providing Elia's affidavit, ActionLink has met its burden to survive summary judgment and demonstrated a genuine issue for trial.

Therefore, Sorgenfrei's motion for summary judgment with respect to claim seven is **DENIED**.

**IV.        CONCLUSION**

For the foregoing reasons, Sorgenfrei's motion for summary judgment is **DENIED** as to counts 1, 2, 5, 6 and 7 and **GRANTED** as to counts 3 and 4.

**IT IS SO ORDERED**.

Dated:      January 27, 2010

                                           **HONORABLE SARA LIOI**
                                           **UNITED STATES DISTRICT JUDGE**